IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSHUA RODNEY MEECH,<br><br>Defendant. | CR 20–13–BU–DLC<br><br><br>FINDINGS OF FACT,<br>CONCLUSIONS OF LAW, and<br>ORDER |

On June 19, 2020, a Grand Jury returned a single count Indictment charging Defendant Joshua Rodney Meech with Making a False Statement During a Firearms Transaction, in violation of 18 U.S.C. § 922(a)(6). (*Sealed* Doc. 1.) Meech waived his right to a jury on September 16, 2020. (Doc. 30.) Consequently, the Court conducted a bench trial on September 28, 2020, pursuant to its jurisdiction under 18 U.S.C. § 3231. For the following reasons, the Court finds Meech guilty of violating § 922(a)(6) and denies his Rule 29 motion for a judgment of acquittal.

## INTRODUCTION

Meech was present, in person, throughout the trial and was represented by Federal Defender Michael Donahoe. Assistant U.S. Attorney Cyndee Peterson represented the government. Before the Court took any evidence, it determined in

open court and on the record that Meech's waiver of his right to a trial by jury was

knowing and intelligent, in writing, and consented to by the government.

Accordingly, the Court approved Meech's jury trial waiver.  (*See* Doc. 30.)

Additionally, the Court confirmed that the parties stipulated to the facts as

indicated in the government's Trial Brief.  (*See* Doc. 34 at 9.)  After the Court's

determinations concerning the jury trial waiver and the stipulation, the bench trial

commenced.  At the close of the government's evidence, Meech moved for a

judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, and

rested his case.  Because he also requested that the Court make specific findings of

fact and conclusions of law, the Court took the entire matter under advisement.

Having carefully reviewed the testimony and evidence presented at trial, the

applicable law, and the parties' arguments presented in their pre-trial briefs and at

trial (*see* Docs. 34, 36), the Court makes and enters the following findings of fact

and conclusions of law pursuant to Federal Rule of Criminal Procedure 23(c).

Based on its findings and conclusions, the Court enters a guilty verdict against

Meech and denies his Rule 29 motion to acquit.

## FINDINGS OF FACT

The following findings of fact are based upon the testimony of the following

witnesses: (1) Henry Brunner, Bob Ward & Sons, Inc., Bozeman, Montana; (2)

Randy Karls, Bob Ward & Sons, Inc., Bozeman, Montana; (3) Deputy Thomas Pallach, Gallatin County Sheriff's Office, Bozeman, Montana; and (4) C.J. Cook, attorney at law, Bozeman, Montana.  Additionally, the Court reviewed the following admitted trial exhibits: (1) Government Exhibit 1 (ATF Form 4473 completed by Meech); (2) Government Exhibit 2 (blank ATF Form 4473); Government Exhibit 3 (temporary restraining order dated January 10, 2020); Government Exhibit 4 (stipulated order of protection entered February 26, 2020); and Government Exhibit 5 (order terminating order of protection dated May 20, 2020).

## I.    Protective Orders Issue from State Court

1.    On January 10, 2020, the state court for Gallatin County, Montana, issued a Temporary Restraining Order ("TRO") in Cause No. DR-19-72C.  The TRO ordered Meech not to "threaten to commit or commit any acts of violence" against his wife, Erica Meech, and three minor children.  Specifically, the TRO restrained Meech from "harass[ing], threaten[ing], abus[ing], follow[ing], stalk[ing], annoy[ing], or disturb[ing] the peace" of Erica Meech and three children. (Government Exhibit 3.)

2.      The TRO set a hearing for January 29, 2020, and instructed Meech to appear, warning that if he failed to do so, an adverse judgment could be entered against him.  (Government Exhibit 3.)

3.      The same day it issued—January 10, 2020—Gallatin County Sheriff's Deputy Thomas Pallach personally served Meech with the TRO.

4.      Bozeman attorney C.J. Cook represented Meech in DR-19-72C.

5.      The January 29, 2020 hearing on the TRO was continued to February 27, 2020.

6.      On February 25, 2020, Meech and his then-wife—represented by their respective attorneys—filed a Stipulated Order of Protection and agreed to vacate the hearing on the TRO.  While the Stipulated Order of Protection dissolved the TRO as it related to the minor children, it continued to proscribe Meech's behavior as it related to his wife.  To that end, the Stipulated Order of Protection prohibited Meech from committing or threatening to commit "any acts of violence" against her, specifying that he should not "harass, threaten, abuse, follow, stalk, annoy, or disturb [her] peace[.]"  (Government Exhibit 4.)

7.      Meech and C.J. Cook signed the Stipulated Order of Protection after they discussed its contents.  The state court entered the Stipulated Order of Protection on February 26, 2020.  The Stipulated Order of Protection stated that it would

remain effective until the parties mutually agreed to dissolve it or upon further order of the court.  (Government Exhibit 4.)

8.     On May 20, 2020, on Erica Meech's motion, the state court terminated the Stipulated Order of Protection.  (Government Exhibit 5.)

9.     Therefore, for the continuous period between January 10, 2020 and May 20, 2020, two consecutively issued court orders in DR-19-72C restrained Meech's conduct as it related to his wife.

## II.     Meech Shops for a Gun

10.     On April 4, 2020, Meech entered Bob Ward & Sons, Inc. in Bozeman, Montana ("Bob Ward") and shopped for a firearm.  The parties agree that at all relevant times, Bob Ward had a Federal Firearms License.

11.     While he shopped, Meech spoke to two Bob Ward employees: Henry Brunner and Randy Karls.  Brunner and Karls answered Meech's questions about various firearms and ammunition.  In total, Meech spent about an hour at Bob Ward interacting with Brunner and Karls.  Ultimately, Meech indicated he wanted to purchase a Sig Sauer pistol.

12.     Accordingly, and pursuant to his training, Brunner handed Meech ATF Form 4473 in its entirety and took Meech's driver's license in turn.

13.     The first section of ATF Form 4473 ("Section A") asks the transferee or buyer of a firearm for personal identifying information.  Additionally, it asks a series of yes-or-no questions, which, as text at the top of the same page explains, are used to "determine whether [the transferee or buyer] [is] prohibited from receiving a firearm."  Section A also contains warnings regarding the veracity and effect of the information the transferee or buyer provides, followed by a date and signature line to be completed by the transferee or buyer.  Among the warnings that precede the transferee or buyer's signature line in Section A is the following admonishment: "I [the firearm transferee or buyer] understand that a person who answers 'yes' to any of the questions 11.b through 11.i . . . is prohibited from purchasing or receiving a firearm."  (Government Exhibits 1, 2.)

14.     The second section of ATF Form 4473 ("Section B") asks for information to be provided by the firearm transferor or seller.  (Government Exhibits 1, 2.)

15.     Following Section B, ATF Form 4473 contains a purpose statement along with instructions for each Section.  Relevant here, this portion of ATF Form 4473 provides the definitions for various terms contained in Section A ("Instructions"). (Government Exhibits 1, 2.)

16.     Brunner and Karls watched Meech complete Section A of ATF Form 4473. (Government Exhibit 1.)  Although neither Brunner nor Karls specifically urged

Meech to read the purpose and instructions portion of ATF Form 4473, they did not discourage him from doing so.

17.     In response to ATF Form 4473 Question 11.h, Meech checked "no." Question 11.h asks whether the firearm transferee or buyer is "subject to a court order restraining [him] from harassing, stalking, or threatening your child or an intimate partner or child of such partner[.]"  Additionally, Question 11.h contains a parenthetical directing the transferor or buyer to the Instructions.  (Government Exhibit 1.)

18.     After Meech completed Section A, he signed and dated on the line provided for the firearm transferee or buyer and returned the ATF Form 4473 to Brunner.

19.     Brunner reviewed the information Meech provided in Section A to confirm he was eligible for the firearm purchase.  Then, Brunner called the National Instant Background Check ("NICS") phone operator for verification.

20.     Had Meech checked "yes" to ATF Form 4473 Question 11.h, Brunner would not have called NICS to verify the information he provided in Section A, because Meech would have been automatically "eliminate[d] from owning or buying a firearm."

21.     NICS responded immediately that the transaction was "delayed."  Therefore, Bob Ward did not transfer the Sig Sauer pistol to Meech on April 4, 2020.  A few

days later, NICS notified Bob Ward that Meech's request to acquire the Sig Sauer

pistol was denied.  Karls relayed the denial to Meech.  When Meech asked for an

explanation, Karls responded that he did not know, as NICS does not provide that

information to Bob Ward.

22.     On April 4, 2020, Meech filled out ATF Form 4473, where he represented

that he was not subject to a court order that restrained him from "harassing,

stalking, or threatening . . . an intimate partner[.]"  (Government Exhibit 1.)  He

made this representation on a form provided by Bob Ward and returned the form to

the same.

## CONCLUSIONS OF LAW

### I.     Jury Trial Waiver

1.     If a criminal defendant is entitled to a jury trial, the trial must be by jury

unless: (1) the defendant waives a jury trial in writing; (2) the government

consents; and (3) the court approves.  Fed. R. Crim. P. 23(a).

2.     Prior to trial in this matter, Meech signed a written waiver of his right to trial

by jury, and the government consented to proceeding to a bench trial.  (Doc. 30.)

Immediately before commencing trial, the Court asked Meech on the record

whether he had discussed his right to a jury trial with his attorney, and further,

whether he understood the implications of waiving that right.  On both counts,

Meech answered in the affirmative.  Based on his answers in open court, the Court

concluded that Meech's written waiver of his jury right was made knowingly,

intelligently, and voluntarily.

3.      Accordingly, finding the first two requisites to proceeding to a bench trial

satisfied, the Court approved Meech's waiver of his jury trial right.

## II.     Elements of Proof: 18 U.S.C. § 922(a)(6)

The Court first addresses Meech's arguments to modify and add to the

elements of proof required to convict him for violating 18 U.S.C. § 922(a)(6).

However, as it did on the record at trial, the Court concludes that the government

could satisfy its burden by proving beyond a reasonable doubt the four elements set

out in the Ninth Circuit's *Manual of Model Criminal Jury Instructions* (2010).

### A.     Conjunctive Indictment Language

4.      "It is common to charge conjunctively when an underlying statute proscribes

more than one act disjunctively; such a charge permits conviction upon proof that

the defendant committed either of the conjunctively charged acts."  *Malta-*

*Espinoza v. Gonzales*, 478 F.3d 1080, 1082 (9th Cir. 2007).

5.      In federal courts, the settled rule is "that an indictment may not be amended

except by resubmission to the grand jury, unless the change is merely a matter of

form."  *United States v. Marolda*, 615 F.2d 867, 871 (9th Cir. 1980) (citation

omitted).  As such, a court may amend an indictment if the change is "immaterial"

and effectively constitutes "the removal of surplusage" without violating a

defendant's Fifth Amendment right to be tried on a grand jury indictment.  *Id.*

6.     The question of prejudice lies at the center of a court's decision to amend the

language of an indictment.  *Id.*  "[W]here the court's examination of the record

reveal[s] that the defendant [is] aware of the government's statutory position . . .

from the beginning of trial" prejudice to the defendant is likely minimal.  *Id.* at

872; *see also United States v. Dawson*, 516 F.2d 796, 802 (9th Cir. 1975) (noting

that reforms in criminal pleading "eliminate the fatal effects of defects which are

merely formal or technical, and which in no way prejudice the defendant or alter

the nature of the indictment").

7.     Here, the government's decision to charge conjunctively[1] what Congress

wrote disjunctively[2] permits conviction upon proof that Meech's allegedly false

statement was either: (1) intended; *or* (2) likely to deceive Bob Ward.

---

[1] In relevant part, the language of the Indictment reads:

> Joshua Rodney Meech, in connection with his acquisition and attempted acquisition of a firearm, namely a Sig Sauer, model P320, 9 mm semi-automatic pistol, from Bob Ward & Sons, Inc. Bozeman, Montana, a licensed dealer, knowingly made a false and fictitious written statement to Bob Ward & Sons, Inc., which statement was *intended and likely to deceive* Bob Ward & Sons, Inc., as to a fact material to the lawfulness of such sale . . . .

(*Sealed* Doc. 1 (emphasis added).)

[2] In relevant part, § 922(a)(6) makes it unlawful for

> any person in connection with the acquisition or attempted acquisition of any firearm . . . knowingly to make any false or fictitious oral or written statement . . .

- 10 -

8.     Furthermore, even if the Indictment's conjunctive language was not an issue of common charging practice, it would be well within the Court's discretion to amend the Indictment to read disjunctively, as such a change would be merely a matter of form.  There is nothing in the record to indicate that Meech operated unaware of the government's statutory position.  Indeed, in his pretrial briefing, Meech pointed the Court to the Ninth Circuit's Model Criminal Jury Instructions, which state the materiality element of 18 U.S.C. § 922(a)(6) in the disjunctive, to argue that the Indictment failed to state an offense.  (Doc. 26 at 5.)  Thus, if the Court found the Indictment defective, amending it to read in the disjunctive on the element of materiality would be merely formal, and would in no way prejudice Meech or alter the nature of the Indictment.

**B.     Modification of Knowledge Requirement**

9.     *Rehaif* fails to support Meech's contention that the Court should modify the elements of proof as they are set out in the Ninth Circuit's Model Criminal Jury Instructions.

---

*intended or likely to deceive* [a licensed dealer] with respect to any fact material to the lawfulness of the sale . . . .
18 U.S.C. § 922(a)(6) (emphasis added).

10.     *Rehaif* involved the scope of the knowledge element when a defendant is prosecuted under 18 U.S.C. §§ 922(g) and 924(a)(2).  *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019).  The Court held that a defendant may be convicted under § 922(g) only if the government proves that the defendant "knew he belonged to the relevant category of persons barred from possessing a firearm."  *Id.* at 2200.

11.     The government here, though, did not prosecute Meech under § 922(g), but under a separate provision of the gun control statute.  The Court understands Meech's argument as it relates to the presumption in favor of scienter and his effort to expand *Rehaif*'s principles to elevate the government's burden of proof in this § 922(a)(6) case.  Essentially, he asks the Court to require proof of his knowledge on two points: (a) that his statement was false; *and* (b) that the law classified him as a prohibited person under § 922(g)(8).

12.     The problem, however, is that *Rehaif* has not been so expanded to prosecutions under § 922(a)(6).  Under this provision, the law of the Ninth Circuit has not changed since 1982: "[t]he government need only show that [the defendant] made a statement he knew to be false *not that he knew he was violating the law*."  *United States v. Williams*, 685 F.2d 319, 321 (9th Cir. 1982) (emphasis added).  In other words, knowledge of the lie is essential, not knowledge of the law.

13.     Therefore, the Court is unpersuaded that it should apply *Rehaif* to inject an additional element of proof into this § 922(a)(6) case.  That Meech may not have known whether he was prohibited from receiving or possessing a firearm under § 922(g) is irrelevant to the crime charged.  Under *Williams*, the government need only prove his knowledge on one point: that his statement was false.

### C.     Addition of Attempt Element

14.     Meech emphasizes that he never actually acquired a gun from Bob Ward. (*See, e.g.,* Doc. 36 at 9.)  Therefore, the argument goes, the government should be required to prove that he took a "substantial step" toward acquiring a gun in violation of 18 U.S.C. § 922(g)(8).  (*Id.*)  However, neither of the cases on which Meech rely stand for the proposition that the elements of inchoate crimes should be added to the elements of proof required for crimes prosecuted under § 922(a)(6).

15.     First, Meech cites *Buffington*, it seems, simply as a source of the elements required to convict for attempt.  (*See* Doc. 36 at 3 (citing *United States v. Buffington*, 815 F.2d 1292, 1301 (9th Cir. 1987).)  Otherwise, *Buffington* appears wholly irrelevant to this case.

16.     Second, and for its part, the Supreme Court in *Abramski* considered whether § 922(a)(6) applied to a straw purchaser—"a person who buys a gun on someone else's behalf while falsely claiming that it is for himself."  *Abramski v. United*

*States*, 573 U.S. 169, 171–72 (2014).  Even if the true buyer could have purchased the gun without the straw, the Court ultimately held, such a misrepresentation is punishable under the law.  *Id.* at 193.  Explaining why the misrepresentation as to the identity of the true purchaser is material, the Court stated that "had [the straw] revealed that he was purchasing the gun on [the true buyer's] behalf, the sale could not have proceeded under the law."  *Id.* at 189.

17.    Although the *Abramski* defendant indeed acquired the gun from the dealer through his misrepresentation, nothing in the case implies that if the lie is caught before the gun changes hands, different or additional elements of proof to convict are required.  To the contrary, the focus of the § 922(a)(6) is the false statement, not whether the buyer takes possession of the gun.  *See Huddleston v. United States*, 415 U.S. 814, 824–25 (1974) (explaining that § 922(a)(6) "was enacted as a means of providing adequate and truthful information about firearms transactions").  As such, a crime under § 922(a)(6) is complete the moment "any false statement [is made] with respect to the eligibility of a person to obtain a firearm from a licensed dealer."  *Id.* at 825.

18.    The statute's plain language is instructive on this point.  In relevant part, § 922(a)(6) makes it unlawful "for any person in connection with the acquisition or attempted acquisition of any firearm . . . knowingly to make any false or fictitious

oral or written statement." The prohibited action is the making of a false statement. Whether a firearm is acquired makes the prohibited action no more or less illegal.

19.     Therefore, the Court rejects Meech's proposed fifth element of proof, which would require it to construe § 922(a)(6) as an inchoate offense unless a defendant actually acquires a firearm. Neither the purpose nor the plain language of the statute permits such a construction.

### D.     Required Elements of Proof

20.     After considering Meech's arguments, the Court concludes that a defendant commits the offense of making a false statement during a firearms transaction, in violation of 18 U.S.C. § 922(a)(6), if the government proves the following elements beyond a reasonable doubt: (1) the seller was a licensed firearms dealer; (2) in connection with attempting to acquire the firearm from the seller, the defendant made a false statement; (3) the defendant knew the statement was false; and (4) the false statement was material—that is, the false statement had a natural tendency to influence, or was capable of influencing the seller into believing that the firearm could be lawfully sold to the defendant. *Manual of Model Criminal Jury Instructions*, Inst. 8.58; *Huddleston*, 415 U.S. at 828.

21.     Here, then, the government bears the burden to prove beyond a reasonable doubt that: (1) Bob Ward was a licensed firearms dealer; (2) in connection with attempting to acquire a Sig Sauer pistol from Bob Ward, Meech made a false statement; (3) Meech knew the statement was false; and (4) the false statement was material—that is the false statement had a natural tendency to influence, or was capable of influencing Bob Ward into believing the Sig Sauer pistol could be lawfully sold to Meech.

## III.     Meech Made a False Statement During a Firearms Transaction

### A.     Licensed Firearms Dealer

22.     For purposes of § 922(a)(6), a firearms dealer means: "(A) any person engaged in the business of selling firearms at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker."  18 U.S.C. § 921(a)(11).  The term "licensed dealer" means "any dealer who is licensed under the provisions" of Chapter 44, Title 18 of the United States Code.  *Id.*

23.     Based on the parties' stipulation, the Court concludes that Bob Ward was a licensed firearms dealer within the meaning of § 922(a)(6) on April 4, 2020.

### B.      False Statement

24.      A statement is false if it is untrue.  *Black's Law Dictionary* (11th ed. 2019).

25.      For the following reasons, the Court concludes that the Stipulated Order of

Protection qualifies as a restraining order as contemplated by ATF Form 4473

Question 11.h and its corresponding Instruction.

### 1.      Hearing

26.      The questions listed in ATF Form 4473, Section A, implement federal gun

control legislation by asking the would-be buyer whether any statutory factor

applies to disqualify him from gun ownership.  *Abramski*, 573 U.S. at 173.

Relevant here, Question 11.h surveys whether a buyer would be prohibited from

firearm possession under 18 U.S.C. § 922(g)(8), which restricts gun possession

from those subject to a court order.

27.      As Meech argued pretrial and this Court and others have agreed, Question

11.h and § 922(g)(8) contain functionally equivalent hearing requirements as it

relates to a qualifying court order.[3]  (*See, e.g.,* Doc. 29 at 9 n.1.); *see also United*

*States v. Bramer*, 956 F.3d 91, 92 n.1 (2d Cir. 2020).  Accordingly, the Court looks

---

[3] The Instructions to Question 11.h state that a qualifying restraining order is one that "was issued after a hearing which the person received actual notice of and had an opportunity to participate in."  (Government Exhibit 1 at 5.)  18 U.S.C. § 922(g)(8) makes it unlawful for any person to possess a firearm "who is subject to a court order that [] was issued after a hearing of which the person received actual notice, and at which such person had an opportunity to participate."

to cases analyzing § 922(g)(8) to determine whether the process leading up to the Stipulated Order of Protection in this case qualified as a "hearing."

28.  Section 922(g)(8) explicitly defines the qualities a hearing must have: "for the purposes of this provision, a hearing simply is a proceeding of which the defendant has 'actual notice' and an 'opportunity to participate'." *United States v. Young*, 458 F.3d 998, 1005–06 (9th Cir. 2006).  The due process protections of a criminal trial are not required.  *Id.* at 1006.  In other words, a § 922(g)(8) hearing "requires actual notice and an opportunity to be heard, but the statute does not require that evidence actually have been offered or witnesses called."  *Id.* (quoting *United States v. Lippman*, 369 F.3d 1039, 1042 (8th Cir. 2004), *cert. denied* 543 U.S. 1080 (2005)).  Still, while requiring less than the due process trappings of a criminal trial, the demands of a § 922(g)(8) hearing almost certainly "exclude[] certain types of restraining orders—such as those issued ex parte and without notice."  *Id.*

29.  Considering the "actual notice" and "opportunity to participate" prongs of the § 922(g)(8) hearing requirement in turn, the Court concludes that the process leading up to the filing of the Stipulated Order of Protection qualifies as a "hearing" within the meaning of the statute.

### a.   Actual Notice

30.   For purposes of § 922(g)(8), "actual notice" requires notice of the hearing

itself, *not* notice of the content of the hearing.  *Id.*  Therefore, the proper question

on this point is "whether the evidence presented in federal court shows [that the

predicate court order] met § 922(g)(8)'s requirement that [the defendant] had

notice of the fact of the hearing."  *Id.* at 1008.

31.   When Gallatin County Sheriff's Deputy Thomas Pallach personally served

him with the TRO, Meech was provided actual notice of the hearing on Erica

Meech's request that the TRO "be made an Order of Protection for the specific

time or effective permanently."  (Government Exhibit 3 at 2, 5.)  In bold typeface,

the TRO informed Meech of the date, time, and location of the hearing, as well as

the consequence for failing to appear.  In other words, the TRO gave more notice

than is required under § 922(a)(6), inasmuch as it informed him of the *content* of

the hearing, in addition to its existence.  *See Young*, 458 F.3d at 1006–07.

### b.   Opportunity to Participate

32.   The plain text of § 922(g)(8) "requires only the mere '*opportunity* to

participate'" in a hearing; actual participation is unnecessary.  *Id.* at 1009

(emphasis in original).  To that end, the Ninth Circuit joined the Fifth and Seventh

Circuits to conclude that the "opportunity to participate" requirement is "a minimal

one." *Id.* (citing *United States v. Banks*, 339 F.3d 267 (5th Cir. 2003) and *United States v. Wilson*, 159 F.3d 280 (7th Cir. 1998)).  Therefore, to prove an "opportunity to participate," the prosecution must only show "a proceeding during which the defendant *could* have objected to the entry of the [predicate protective] order or otherwise engaged with the court as to the merits of the restraining order." *Id.* (emphasis in original).

33.     The Fifth Circuit's discussion in *Banks* is instructive where, as here, the court order predicate to the federal prosecution is a stipulated protective order.  *See generally* 339 F.3d 267.  There, after he was provided actual notice of the hearing date, the represented defendant appeared on the scheduled hearing date and informed the court that a settlement had been reached.  *Id.* at 268.  The parties called no witnesses and presented no evidence.  *Id.*  After the court had been informed of the intent to settle, the defendant signed the agreed order in his attorney's office.  *Id.*  Once the state's attorney had done the same, the presiding judge "signed the order in his chambers outside the presence of either of the parties" and returned it for filing.  *Id.*  The Fifth Circuit concluded that this process constituted a "opportunity to participate" under § 922(g)(8), explaining that "Banks had an opportunity to put on evidence, but he did not avail himself of that opportunity."  *Id.* at 270–71.

- 20 -

34.    So, too, here.  Indeed, the only daylight the Court sees between the agreed order in *Banks* and the Stipulated Order of Protection in this case is that Meech did not wait until the date of the hearing to sign it.  Instead, along with his attorney, Meech signed the Stipulated Order of Protection two days before the hearing was set to commence.  However, in the Court's view, this temporal distinction is immaterial.  Nothing in the record indicates that the standing master for the Eighteenth Judicial District was not prepared to listen to both sides of the dispute on the date set for the hearing.  *See Banks*, 339 F.3d at 271.  Furthermore, were the Court to find this distinction dispositive, a defendant could avoid later federal prosecution by simply consenting to an agreed order in the eleventh hour before the hearing date.  *See id.* at 272.  The Court declines to undermine the protections contemplated by § 922(g)(8) and its Question 11.h corollary by doing so.

35.    Thus, the Court concludes that Meech had an "opportunity to participate" as defined by § 922(g)(8) and the Instructions to Question 11.h.  He could have objected to the entry of the Stipulated Order of Protection or otherwise engaged with the court as to the merits of the order but did not avail himself of that chance.

## 2.    Conduct Restrained

36.    The Instructions to Question 11.h tightly, though not exactly, correspond with the corollary language in § 922(g)(8).  In both, however, the operative

- 21 -

language and relevant inquiry is the same: whether the court order restrained the would-be gun purchaser from "harassing, stalking, or threatening an intimate partner[.]" *Compare* Government Exhibit 1 at 5 *with* 18 U.S.C. § 922(g)(8)(B).

37.     Both the Instructions to Question 11.h and the applicable statute define "intimate partner" to include the prospective gun-buyer's spouse or former spouse. Government Exhibit 1 at 5; 18 U.S.C. § 921(a)(32).

38.     The Stipulated Order of Protection restrains the conduct contemplated by Question 11.h and § 922(g)(8).  It orders that "Respondent [Meech] will not harass, threaten, abuse, follow, stalk, annoy, or disturb the peace of Petitioner [Erica Meech]"—his then-wife.  (Government Exhibit 4 at 2.)

### 3.    Explicit Prohibition of Physical Force

39.     The Instructions to Question 11.h and § 922(g)(8) are in lockstep on the third qualification for a "restraining order."  In both and in relevant part, the predicate order must "by its terms explicitly prohibit[] the use, attempted use, or threatened use of physical force against such intimate partner . . . that would reasonably be expected to cause bodily injury[.]" *Compare* Government Exhibit 1 at 5 *with* 18 U.S.C. § 922(g)(8)(C)(ii).

40.     Joining its First, Fourth, and Eleventh Circuit sisters, the Ninth Circuit held in *United States v. Sanchez* "that a conviction under 18 U.S.C. § 922(g)(8) does not

require the precise language of (8)(C)(ii) to be contained in a court order. However, a court order must contain explicit terms substantially similar in meaning to the language of (8)(C)(ii)." *Id.* at 1205 (citing *United States v. DuBose*, 598 F.3d 726 (11th Cir. 2010) (per curiam); *United States v. Coccia*, 446 F.3d 233 (1st Cir. 2006); *United States v. Bostic*, 168 F.3d 718 (4th Cir. 1999)).

41.    The terms of a predicate order are "explicit" if—"without implication, vagueness, or ambiguity"—they ban the use, threatened use, or attempted use of physical force. *Id.* "While this does not require the court order to track the language of (8)(C)(ii), it must include specific terms that clearly—and without implication—prohibit such activity." *Id.*

42.    Explaining that a court may issue such an order for reasons unrelated to the safety of the individual named in the order, the *Sanchez* court concluded that the predicate order before it failed to satisfy (8)(C)(ii), as it only prescribed "no contact" and lacked any explicit prohibitions on physical force, abuse, or harm. *Id.* at 1205–06. "In such a situation, there is no presumption that the person subject to the order represents a threat of violence." *Id.* at 1206. In contrast, the presumption of violence exists where court orders contain express and specific terms limiting the defendant's conduct:

> [T]he court order in *DuBose* expressly prohibited the defendant 'from intimidating, threatening, hurting, [or] harassing' his intimate partner,

> 598 F.3d at 730–31, while the court orders in *Coccia* and *Bostic*
> expressly directed the defendants to "refrain from abusing" their
> intimate partners, 446 F.3d at 242, 168 F.3d at 722.

*Id.* at 1204–05.

43.    The Stipulated Order of Protection restrained Meech from committing or threatening to commit "any acts of violence" against Erica Meech.  The definition of "violence" includes "[t]he use of physical force . . . [especially] physical force unlawfully exercised with the intent to harm." *Black's Law Dictionary*.

44.    The Stipulated Order of Protection also barred Meech from "abus[ing]" Erica Meech.  The "definition of 'abuse' as a verb includes 'to injure a person physically or mentally[.]'" *Coccia*, 446 F.3d at 242 (citation omitted).  "Abuse" as a noun includes "physical or mental maltreatment, often resulting in mental, emotion, sexual, or physical injury." *Id.*

45.    The Stipulated Order of Protection's language satisfies the requirement under § 922(g)(8)(C)(ii) and its ATF Form 4473 corollary by explicitly prohibiting the use, attempted use, or threatened use of "physical force" reasonably expected to cause bodily injury.  "A narrower interpretation would defeat what [the Court] conceives to be the obvious and general purpose of the statute." *DuBose*, 598 F.3d at 731.

/ / /

46.     Because the Stipulated Order of Protection qualifies as a "Restraining Order" pursuant to Question 11.h and the corresponding statute, and because it remained effective from February 26, 2020 until May 20, 2020, Meech made a false statement on April 4, 2020 when, while attempting to purchase the Sig Sauer pistol, he responded that he was not subject to such an order.

### C.     Knowledge of Statement's Falsity

47.     In a § 922(a)(6) case, "[t]he government need only show that [the defendant] made a statement he knew to be false not that he knew he was violating the law." *Williams*, 685 F.2d at 321.

48.     "The element of knowledge may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him."  *Id.* (citation omitted).

49.     Meech signed the Stipulated Order of Protection in the presence of his attorney on February 25, 2020.  The Stipulated Order of Protection advised that it remained effective until the parties mutually agreed to dissolve it or upon further court order.  Nothing further issued in the matter until May 20, 2020.

50.     Based on Meech's signing the Stipulated Order of Protection, the Court concludes that he knew that his response to ATF Form 4473 Question 11.h on April 4, 2020 was false.  That he deliberately chose not to read the Instructions to

Question 11.h—which explained how the Stipulated Order of Protection

qualifies—is irrelevant.

### D.   Materiality

51.   As already stated, a false statement is material if it "had the natural tendency

to influence or was capable of influencing" Bob Ward into believing it could

lawfully sell the Sig Sauer to Meech.  *Manual of Model Criminal Jury Instructions*,

Inst. 8.58; *Huddleston*, 415 U.S. at 828.

52.   Congress designed § 922(a)(6) "to ensure that the dealer can rely on the

truthfulness of the buyer's disclosures in carrying out its obligations." *Abramski*,

573 U.S at 174.  As such, to protect dealers' ability to carry out their record-

keeping duties under federal gun law, § 922(a)(6) criminalizes certain false

statements during firearms transactions. *Id.*

53.   A false statement is "material" under § 922(a)(6) if the sale of the gun could

not have proceeded under the law had the would-be purchaser truthfully revealed

his ineligibility to possess a firearm.  *Id.* at 189.  Put another way, if would-be

purchaser had been truthful, and the sale "could not have gone forward" because

the dealer could not have certified its belief that the transfer was "not unlawful,"

the false statement is material.  *Id.*

54.    Had Meech admitted that he was under a qualifying restraining order, the sale here would not have gone forward, because Henry Brunner would not have called NICS to verify the information Meech provided in Section A.  Brunner explained that a "yes" answer to ATF Form 4473 Question 11.h would have automatically "eliminate[d] Meech from owning or buying a firearm."

55.    Meech's false statement was material.

## VERDICT

After considering the facts presented at trial and making the foregoing conclusions of law, the Court finds that the government proved beyond a reasonable doubt every required element of the offense charged in the Indictment. Accordingly, the defendant, Joshua Rodney Meech, is GUILTY of making a false statement during a firearms transaction, in violation of 18 U.S.C § 922(a)(6).

## ORDER

Because the Court finds that the evidence presented is sufficient to sustain a conviction, IT IS ORDERED that Meech's motion for a Rule 29 judgment of acquittal is DENIED.

DATED this 1st day of October, 2020.

Dana L. Christensen, District Judge
United States District Court